# 21-2537

In The

# United States Court of Appeals

FOR THE SECOND CIRCUIT

JOHN DOE

*Petitioner,*

- *against* -

SECURITIES AND EXCHANGE COMMISSION,

*Respondent,*

ON PETITION FOR REVIEW FROM THE UNITED STATES
SECURITIES AND EXCHANGE COMMISSION

PETITION FOR REHEARING *EN BANC*
ON BEHALF OF PETITIONER JOHN DOE

LAW OFFICES OF EZRA SPILKE
1825 Foster Avenue, Suite 1K
Brooklyn, New York 11230
Tel: (718) 783-3682

*Counsel for Whistleblower-Petitioner
John Doe*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. ii

**RULE 35(b)(1) STATEMENT OF QUESTIONS OF EXCEPTIONAL IMPORTANCE** ..........................................................................................................1

**INTRODUCTION** ...................................................................................................1

**ARGUMENT** ...........................................................................................................2

   **I. DOE PRESERVED FOR APPEAL THE ISSUE OF WHETHER HE WAS CONVICTED** ............................................................................................2

   **II. NO DEFERENCE IS OWED TO THE COMMISSION'S NON-PRECEDENTIAL RULING** .................................................................................5

      **A. Generally** ....................................................................................................5

      **B. "Convicted"** ................................................................................................8

      **C. "Related to"** ..............................................................................................11

   **III. THE COMMISSION'S *AD HOC* APPROACH TO DETERMINING RELATEDNESS IS ARBITRARY** ...................................................................12

**CONCLUSION** .....................................................................................................14

**CERTIFICATE OF COMPLIANCE** ...................................................................15

## TABLE OF AUTHORITIES

Cases

*Bartko v. Sec. & Exch. Comm'n*, 845 F.3d 1217 (D.C. Cir. 2017)..........................10
*Burton v. Stewart*, 549 U.S. 147, 156 (2007) ..............................................................9
*Christensen v. Harris Cnty.*, 529 U.S. 576 (2000) ......................................................6
*De La Mota v. U.S. Dep't of Educ.*, 412 F.3d 71 (2d Cir. 2005) ...............................5
*Deal v. United States*, 508 U.S. 129 (1993) ...............................................................9
*Dean v. United States*, 581 U.S. 62, 137 S. Ct. 1170 (2017) ...................................11
*Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303 (10th Cir. 2012) .......................................................................................................................10
*Gonzales v. Oregon*, 546 U.S. 243 (2006) ..................................................................5
*Lopez v. Terrell*, 654 F.3d 176 (2d Cir. 2011)................................................6, 7, 8, 9
*Rotimi v. Gonzales,* 473 F.3d 55 (2d Cir. 2007).........................................................6
*Sidabutar v. Gonzales*, 503 F.3d 1116 (10th Cir. 2007).............................................4
*United States v. Butler*, 297 U.S. 1 (1936) ...............................................................10
*United States v. Mead Corp.*, 533 U.S. 218, 227 (2001)........................................5, 6
*Ye v. Dep't of Homeland Sec.*, 446 F.3d 289 (2d Cir. 2006) .....................................4

Statutes

8 U.S.C.A. § 1101 ........................................................................................................9

Other Authorities

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (2012) ......................................................................................................10, 11
Fed. R. Crim. P. Rule 32(k)(1) ....................................................................................9
*In the Matter of Gregory Bartko*, Exchange Act Release No. 71666, 2014 WL 896758 (Mar. 7, 2014) ............................................................................................10
SEC Final Rule, release No. 34-64545, File No. S-7-33-10. Fed. Register, Vol 78, No. 113, June 13, 2011 ............................................................................................14

Rules

17 C.F.R. § 240.21F-6................................................................................................14

# RULE 35(b)(1) STATEMENT OF QUESTIONS OF EXCEPTIONAL IMPORTANCE

(1) Whether this Court should extend to agencies other than the Board of Immigration Appeals ("BIA") its practice of excusing a petitioner's failure to raise a claim when the agency nonetheless made a substantive ruling on that claim.

(2) Whether the Commission's heavily redacted Orders Determining Whistleblower Award Claims and sealed Whistleblower Award Proceedings are non-precedential agency rulings that do not warrant *Chevron* deference.

(3) Whether the Commission's *ad hoc* approach to determining relatedness should be rejected as arbitrary.

## INTRODUCTION

Beginning in 2015, when he approached the Commission through an anonymous tip form, John Doe gave the Commission and the Department of Justice a wealth of detailed information about large-scale bribe payments paid to a foreign government over the course of several years from the late-aughts to the 2010s. Based in large part on a treasure trove of evidence provided by Doe, the Commission and the DOJ successfully prosecuted enforcement actions and a criminal case against the bribe-paying companies. The actions were brought to enforce provisions of the Foreign Corrupt Practices Act, under which the Commission recovered hundreds of millions of dollars. Doe's assistance continues to this day.

Doe's usefulness to the Commission was met by a series of poorly supported legal decisions and factual determinations. The Commission acted arbitrarily and

capriciously at every turn to deny Doe a fair hearing on his entitlement under The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank") to a portion of its huge financial recovery.

For the reasons that follow, this appeal is a fitting vehicle for this Court to settle a number of exceptionally important questions that impact the due process rights of *all* whistleblower claimants before the Commission.

## ARGUMENT

I. **DOE PRESERVED FOR APPEAL THE ISSUE OF WHETHER HE WAS CONVICTED**

In its Preliminary Determination, the Commission found that Doe was ineligible for an award because he was "convicted of a criminal violation that was related to the Covered Action and the [related criminal action]." (A126.) This finding involved the Commission's interpretation of two statutory terms – "convicted" and "related to" – both of which Doe contested.

Doe filed a timely response contesting the Commission's Preliminary Determination, stating: "The Claims Review Staff has incorrectly concluded that [Doe] was convicted of a criminal violation that was related to the Covered Action and the . . . Criminal Action." (A201). The panel found that Doe failed to challenge the Commission's determination that he was "convicted" and, thereby, waived the issue. However, Doe's challenge was to the Commission's determination as a

whole, and to the extent that his challenge to the term "convicted" was not adequately raised, the Commission itself ruled on the merits of the issue.

After reviewing Doe's response to its Preliminary Determination, the Commission issued a Final Order, in which it concluded that "[a]though Claimant 2 [Doe] provided information that assisted the Staff, Claimant 2 was convicted of a criminal violation that was related to the Covered Action and Related Action 1." A footnote at the end of this sentence provided the basis for the Commission's conclusion that Doe had been "convicted":

> Section 202(a)(6) of the Investment Advisers Act of 1940 provides as follows: "'Convicted' includes a verdict, judgment, or plea of guilty, or a finding of guilt on a plea of nolo contendere, if such verdict, judgment, plea, or finding has not been reversed, set aside, or withdrawn, whether or not sentence has been imposed." Although the term "convicted" is not defined in the Exchange Act, the Commission has held that "there is no reason for ascribing a different meaning to the word 'convicted' in the Exchange Act to the meaning given to that term in the Advisers Act." *See Gregory Bartko*, Exchange Act Release No. 71666, 2014 WL 896758, at 12 (Mar. 7, 2014), aff'd in part, rev'd in part on other grounds, 845 F.3d 1217 (D.C. Cir. 2017) (alteration and footnote omitted).

(A393, n.15). The Commission, in its opposition brief to this Court, conceded that its decision was a determination on the merits, (*see* Respondent's Brief, at p. 22.), and the Commission's decision to rule on this issue on the merits preserved it for appellate review.

This Court has addressed analogous situations in the context of removal decisions made by the Board of Immigration Appeals ("BIA"). For example, in *Ye*

-3-

*v. Dep't of Homeland Sec.*, 446 F.3d 289 (2d Cir. 2006), the Court excused an petitioner's failure to request relief under the Convention Against Torture ("CAT") before the BIA because the BIA had addressed this claim despite the petitioner's oversight. *Id.* at 296-97; *see also Mei Mei Liu v. Mukasey*, 264 F. App'x 530, 533 (7th Cir. 2008) ("Where . . . the BIA applied its expertise and exercised its discretion to make a substantive ruling on whether Liu had shown changed country conditions, it would be bizarre—and decidedly unfair to [Liu]—for us to refuse to review that decision." (internal quotation marks and citation omitted)); *Sidabutar v. Gonzales*, 503 F.3d 1116, 1222 (10th Cir. 2007) (holding that a "substantive final decision by the BIA on the issues . . . is all that is needed to confer our jurisdiction"). However, this accommodation has not been applied to Commission decisions in this Circuit.

This Court should grant *en banc* consideration to decide whether the Court's practice of excusing a petitioner's failure to raise a claim when the agency nonetheless made a substantive ruling on that claim should extend to agencies other than the BIA. The equities counsel towards extending the same courtesy to Commission claimants; here, as in *Ye*, the Commission has exercised its discretion to make a substantive ruling as to whether Doe is "convicted" for purposes of disqualifying him from an award. This substantive final ruling should be reviewed by the Court.

## II. NO DEFERENCE IS OWED TO THE COMMISSION'S NON-PRECEDENTIAL RULING

### A. Generally

Although the Summary Order did not discuss the level of deference the Court owed to the Commission, the issue was discussed at oral argument, during which counsel for the Commission agreed that its Final Order satisfies the *Mead* test for when an agency receives *Chevron* deference. Oral Argument at 25:10, https://www.ca2.uscourts.gov/decisions/isysquery/3459e13a-f8b3-4196-995f-1cd73361fbe0/1/doc/21-2537.mp3. But for the following reasons, the Commission is mistaken: final orders deciding the allocation of whistleblower awards do not warrant *Chevron* deference.

"[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ." *United States v. Mead Corp.*, 533 U.S. 218, 227-28 (2001). *Chevron* deference, which is highly deferential, "requires courts to defer to an agency's interpretation of an ambiguous statute unless the interpretation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *De La Mota v. U.S. Dep't of Educ.*, 412 F.3d 71, 78 (2d Cir. 2005) (quoting *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984)). But "*Chevron* deference . . . is not accorded merely because the statute is ambiguous and an administrative official is involved," *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006)

and the degree of deference owed "var[ies] with circumstances." *Mead Corp.*, 533 U.S. at 228.

"[I]nterpretations derived from agency lawmaking—which would fall within the ambit of *Chevron*—are typically those pronouncements which are binding on third parties and originate in a notice-and-comment fashion." *Lopez v. Terrell*, 654 F.3d 176, 182-83 (2d Cir. 2011) (quoting *De La Mota*, 412 F.3d at 79). On the other hand, "interpretations contained in policy statements, agency manuals and enforcement guidelines . . . do not warrant *Chevron* style deference." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

Pronouncements warranting *Chevron* deference may be the result of an adjudicative process, but not when the decisions are non-precedential. *Rotimi v. Gonzales,* 473 F.3d 55, 57 (2d Cir. 2007). Under such circumstances, the agency has communicated to the public no intention to treat the decisions as "carry[ing] the force of law." *Id.* at 58 (quoting *Mead*, 533 U.S. at 227).

In *Lopez*, a regional director for the Federal Bureau of Prisons issued an interpretation of 18 U.S.C. § 3624(b) that affected the calculation of the amount of good-time credits the petitioner had earned. The decision was issued after the petitioner "filed a complaint through the BOP's Administrative Remedy Program ('ARP')." *Lopez*, 654 F.3d at 180. The threshold issue on appeal was whether the regional director's ARP decision warranted *Chevron* deference. This Court

"decline[d] to afford *Chevron* deference to the BOP's interpretation of 18 U.S.C. § 3624(b)." *Id.* at 183. The Court found it persuasive that the decision was "clearly not the product of a notice-and-comment procedure, since it originated from Lopez's administrative complaint, nor [was] it binding on any party other than Lopez himself." *Id.*

Likewise, here, the Commission's decision originated from Doe's filing of an application for a whistleblower award. The decision was not the product of a notice-and-comment procedure, and it was not binding on any party other than Doe and the two other claimants. The criteria identified in *Lopez* and in *Rotimi* all counsel against *Chevron* deference.

One additional fact completely undercuts any claim that the Commission's decision was entitled to *Chevron* deference. In the version of the Final Order the Commission released to the public, the Commission redacted its analysis as to Doe's eligibility for an award in its entirety.[1] The Commission did not make its statutory interpretations of "convicted" and "related to" or its reasons for adopting them available to anyone but the participants in the award process. It is difficult to imagine that a non-public interpretation restricted to the parties is intended to be precedential.

---

[1] https://www.sec.gov/rules/other/2021/34-92985.pdf.

-7-

This Court must grant *en banc* review to determine whether the Commission's decisions to deny whistleblower awards warrant *Chevron* deference. This Court's prior decisions in *Rotimi* and *Lopez* suggest that such deference is unwarranted.

When an agency's interpretation of a statute does not carry the force of law, the Court may defer to the agency "only to the extent that [the agency's decision] has the power to persuade." *Lopez*, 654 F.3d at 183. "[T]he weight afforded an agency interpretation depends on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*

Here, the Commission's interpretation of both terms – "convicted" and "related to" – fail to meet those criteria.

**B. "Convicted"**

The Commission's reasoning in interpreting "convicted" to exclude Doe from a Whistleblower award is wanting. That the Commission's interpretation of "convicted" represented a *possible* usage is not sufficient, particularly in light of the context in which that term appears. Does the sentence "The Bureau of Alcohol, Tobacco, Firearms and Explosives sanctions firearms dealers," mean that the ATF gives official permission to firearms dealers to conduct their business or that the ATF penalizes them? The ATF is empowered to do both, but the meaning of

-8-


"sanction" in this sentence obviously depends on context. Just because one or the other meaning is a possible usage of the word would not allow an agency to choose either interpretation equally.

As to the term "convicted," the Supreme Court has observed: "It is certainly correct that the word 'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding." *Deal v. United States*, 508 U.S. 129, 132 (1993). For example, in the immigration context, the term "conviction" means "a formal judgment of guilt . . . entered by a court" or a finding of guilt or guilty plea that is followed by the imposition of "some form of punishment, penalty, or restraint on . . . liberty." 8 U.S.C.A. § 1101. The immigration definition comports with the understanding of the meaning of the term in the federal criminal context, which should control here absent exceptional circumstances. *See* Fed. R. Crim. P. Rule 32(k)(1); *Burton v. Stewart*, 549 U.S. 147, 156 (2007).

Further, the Commission disregarded canons of statutory interpretation, a factor that the *Lopez* Court cited as relevant in finding an agency's interpretation to be persuasive under *Skidmore*. *Lopez*, 654 F.3d at 183 ("The agency's contextual approach aligns with traditional canons of statutory interpretation."). The Surplusage Canon supports an interpretation of "convicted" that excludes pre-sentence pleas of guilty. That canon counsels that courts should be "hesitant to assume Congress included pointless language in its statutory handiwork." *Elwell v.*

*Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1307 (10th Cir. 2012); *see also United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."). *See generally* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (2012).

The Commission's interpretation of "convicted" in the Exchange Act would rob the IAA's particularized definition of all independent effect. Congress decided to include a definition of "convicted" in the IAA that explicitly includes verdicts or pleas of guilty – whether or not sentence has been imposed. Congress decided not to include any such definition in the Exchange Act. The Commission's decision to graft the IAA's definition onto the Exchange Act[2] suggests either that Congress's decision to define the term in the IAA was meaningless surplusage or that its decision to omit this definition from the Exchange act was unintentional. Neither

---

[2] The Commission's position on the definition of the word "convicted" relied on a single unpublished decision from 2014, *In the Matter of Gregory Bartko*, Exchange Act Release No. 71666, 2014 WL 896758 (Mar. 7, 2014), in which the Commission employed the Exchange Act to sanction a bad actor who had defrauded investors through the sale of securities, using the Exchange Act, and had been found guilty by a jury but not yet sentenced, importing the IAA's definition of conviction in order to do so. These sanctions were reversed by the D.C. Circuit in *Bartko v. Sec. & Exch. Comm'n*, 845 F.3d 1217 (D.C. Cir. 2017), which concluded that the Commission's use of Dodd-Frank's collateral bar against Bartko constituted an impermissibly retroactive penalty as Bartko's misconduct had taken place prior to the enactment of Dodd-Frank.

conclusion is reasonable, given that Congress has shown that it carefully considered the factors that would disqualify a whistleblower claimant for an award. Under the canons of statutory interpretation, courts should prefer a "meaning that leaves both provisions with some independent operation." Scalia & Garner, *supra*.

Relatedly, the Canon of Statutory Silence instructs Courts to use a term's plain and ordinary meaning, to view statutory silence as intentional, and to look to the intent of Congress. *See Dean v. United States*, 581 U.S. 62, 137 S. Ct. 1170, 1177 (2017) (quoting *Kimbrough v. United States*, 552 U.S. 85, 103 (2007)) ("We have said that '[d]rawing meaning from silence is particularly inappropriate' where 'Congress has shown that it knows how to direct sentencing practices in express terms.'"). In light of Congress's use of an expanded definition of "convicted" in the IAA, its silence in Dodd-Frank indicates that it did not want to import the IAA's definition.

### C. "Related to"

For many of the same reasons, *Chevron* deference does not apply to the Commission's reasoning as to relatedness. Notably, neither the Commission's construction of the term "related to" nor its reasoning as to that interpretation is publicly accessible. So, any claim that the decision in this case carries with it the force of law can easily be dismissed.

-11-

As to *Skidmore* deference, for the reasons below, the Commission's approach to determining relatedness generally and its interpretation of relatedness in this case lack the power to persuade and must be rejected by this Court *en banc* as arbitrary and capricious.

### III. THE COMMISSION'S *AD HOC* APPROACH TO DETERMINING RELATEDNESS IS ARBITRARY

During oral argument, the Commission agreed that the relatedness inquiry has to do with the degree of overlap between the criminal conduct and the covered action. Oral Argument at 19:15, *supra*. But the Commission cited no benchmark of sufficient relatedness and all but admitted that it has adopted no test to determine that benchmark.

The Commission could not state whether conduct was related that shared, for example, overlapping participants, time-period, and modus operandi but *not* the same country of operations. *Id.* at 22:11. Rather, the Commission's position was that it takes a fact-intensive, we-know-it-when-we-see-it approach. The Commission clearly attempts to pass a litigation position in this case as a general standard. In fact, there is no standard, and the Commission's method of determining relatedness is arbitrary and unreasonable, and this Court owes it no deference.

Obviously, some overlap is needed for two subjects to be deemed related. But the does not identify which factors are dispositive or even important and how

-12-

much weight to give to such factors as the degree of overlap required, which overlapping factors are essential, and which are merely persuasive. The Commission has articulated no standard leading to Doe's disqualification for conduct in which he was not involved and of which he was unaware until it had concluded.

As to this case in particular, the Commission failed to reconcile facts and inferences that are inconsistent with its assertion of relatedness. The Commission used Doe's knowledge, conveyed to the Commission at great personal risk, to bring successful enforcement actions, signaling the Commission's faith in the accuracy of Doe's information. Doe's assistance remains ongoing, meaning that the Commission and the DOJ (whose lawyer the Commission relied upon more than anyone to find relatedness) still find Doe credible. At the same time, the Commission suggests that Doe is lying when he asserts that he learned about the schemes that were the subject of the covered action and the related action only after it was completed. *See* Oral Argument at 21:24, *supra*; A 112. It is hard to fathom how both can be true.

The objective of the whistleblower program is to provide strong, monetary incentives to motivate people to come forward with information and thereby risk their livelihoods. S. Rep. No. 111–176, at 111 (2010). To accomplish this objective, the Commission explicitly allows a culpable whistleblower to recover an

award. 17 C.F.R. § 240.21F-6(b)(1); *see also* Adopting Release, *supra*, 2011 WL 2045838, at *89; and distinguishes culpable whistleblowers – who are entitled to an award – from those who had been convicted of related conduct – who are not. The basis for that distinction was the injustice of enriching people for "their own misconduct or misconduct for which they are *substantially responsible*." SEC Final Rule, release No. 34-64545, File No. S-7-33-10. Fed. Register, Vol 78, No. 113, p. 34350, June 13, 2011 (emphasis added). Interpreting "related to" to require actual involvement in the conduct underlying the Commission's enforcement action comports with the objective of Congress in creating the whistleblower program. But the Commission did not create any relatedness standard whatsoever and arbitrarily reached the result here.

## CONCLUSION

WHEREFORE, the Court should grant the petition for rehearing *en banc*.

Dated:    Brooklyn, New York
         December 13, 2022

>                          Respectfully submitted,
>
>                          _____/s_____
>                          EZRA SPILKE, ESQ.
>                          Law Offices of Ezra Spilke
>                          1825 Foster Avenue
>                          Brooklyn, NY 11230
>                          T: 718-783-3682

-14-

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, the foregoing brief contains fewer than 3,142 words according to the word count function of the MS Word application and is, thus, in compliance with the type-volume limitation set forth in Rule 35(b)(2)(A) of the Federal Rules of Appellate Procedure.

Dated:     Brooklyn, New York
               December 13, 2022

                                                Respectfully submitted,

                                                /s
                                        EZRA SPILKE, ESQ.
                                        Attorney for Petitioner
                                        JOHN DOE
                                        Law Offices of Ezra Spilke
                                        1825 Foster Avenue
                                        Brooklyn, NY 11230
                                        T: 718-783-3682